UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ROSE,

    Plaintiff,                              CIVIL ACTION NO. 06-15543

  v.                                    DISTRICT JUDGE PAUL D. BORMAN
                                        MAGISTRATE JUDGE DONALD A. SCHEER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

\*     \*     \*

Plaintiff filed an application for Social Security disability insurance benefits on August 18, 2003, alleging that he had been disabled and unable to work since June 18, 2003, at age 44, due to breathing difficulties, joint pain and diabetic retinopathy. Benefits were denied by the Social Security Administration (SSA). A requested de novo hearing was held on September 21, 2005, before Administrative Law Judge (ALJ) Sandra Rogers. The ALJ subsequently found that the claimant was not entitled to disability benefits because he retained the ability to perform a restricted range of sedentary work providing a sit-stand option. The Law Judge found that the claimant was unable to do any rope/ladder/scaffold climbing, work around dangerous machinery or reach above shoulder level. The ALJ limited Plaintiff to properly ventilated environments that had minimal exposure to fumes, odors, dust and gasses. He was also restricted to occasional stair climbing, balancing, stooping,

kneeling, crouching and crawling. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 46 years old at the time of the administrative hearing (TR 593). He had a tenth grade education, and had been employed as automobile assembler and crane operator during the relevant past (TR 72, 83, 618). Both jobs required him to remain on his feet for most of the workday. He constantly had to handle, grip and manipulate large and small objects. He had to lift up to 25 pounds on a regular basis (TR 84-85). Claimant stopped working in June 2003, due to a variety of ailments that included Legionnaires' disease, a staph infection and shortness of breath (TR 593-594). While the symptoms related to Legionnaires' disease and the staph infection were successfully treated, Plaintiff testified that he still experienced breathing difficulties upon exertion (TR 595-596). Other impairments which allegedly prevented him from working included back, neck and shoulder pain, left leg numbness, heart problems and insulin dependent diabetes (TR 597-598). The claimant stated that he walked with a cane due to poor balance (TR 601). Plaintiff added that he depended on his wife to do most of the household chores (TR 602).

A medical expert, Dr. King, testified, via telephone, that his review of the medical records revealed that Plaintiff had been hospitalized for one month, in June 2003, for treatment of Legionnaires' disease (TR 608). Recent pulmonary function studies, however, showed that the claimant enjoyed "very good" pulmonary function (TR 608). While the recovery from the Legionnaires' disease caused Plaintiff to lose muscle conditioning, Dr.

King believed that the claimant could return to work, with certain limitations, after undergoing physical therapy and vocational rehabilitation (TR 610-611, 614).

A Vocational Expert, Ms. Princer, classified Plaintiff's past work as medium, unskilled and semi-skilled activity (TR 618). The witness testified that there would not be any jobs for claimant to perform if his testimony were fully accepted[1] (TR 620). If he were capable of sedentary work, however, there were numerous clerical, security monitor and receptionist jobs that he could perform with minimal vocational adjustment (TR 619). These jobs provided a sit-stand option, and did not require forceful grasping of objects, frequent stair climbing, or repetitive use of foot controls in the performance of assigned duties. These jobs also did not expose workers to dangerous machinery, unprotected heights, polluted air environments or temperature extremes (TR 618).

## LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as a result of diabetes mellitus, degenerative disc disease of the cervical spine, right shoulder pain, chronic obstructive pulmonary disease with tobacco abuse and moderate mitral valve stenosis, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's difficulties prevented him from work requiring repetitive foot motions, work around dangerous machinery and lifting above shoulder level. The ALJ limited Plaintiff to properly ventilated environments that had minimal exposure to fumes, odors, dust and gasses. She further determined that Plaintiff could perform only occasional climbing, balancing,

---

[1] The witness testified that claimant's alleged need to lie down several times a day would preclude all work activity (TR 620).

stooping, kneeling, crouching, reaching and crawling. The Law Judge found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, within those limitations, as identified by the Vocational Expert.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that he remains capable of performing a limited range of sedentary work activity. He also argues

that the ALJ improperly evaluated his credibility, and did not take into consideration all of his functional limitations. Defendant counters that the claimant retains the residual functional capacity for a reduced range of sedentary work because the objective clinical evidence of record did not confirm the disabling nature of his joint pain or cardiopulmonary problems.

DISCUSSION AND ANALYSIS

A claimant's subjective allegations of disabling pain are insufficient, by themselves, to support a claim for benefits. Sizemore v. Secretary, 865 F.2d 709, 713 (6th Cir. 1988). Pain alone can be disabling if it is severe enough to preclude all substantial, gainful activity, but the symptoms must be substantiated by some objective, clinical or laboratory findings. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985). Where, as here, the claimant alleges disability as a result of severe pain, the Sixth Circuit has established a standard to evaluate those complaints. Under that standard, a claimant has the burden of providing objective evidence confirming the severity of the alleged pain, or establishing that the medical condition is of such a kind and severity that it could reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986), McCormick v. Secretary, 861 F.2d 998, 1002-1003 (6th Cir. 1988).

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of simple, routine, sedentary work, with no overhead reaching and no repetitive foot movements. Contrary to Plaintiff's assertion, the medical evidence did not support his allegations of totally disabling diabetes, joint pain or breathing difficulties.

Plaintiff underwent nearly two months of intensive treatment for acute respiratory distress in the summer of 2003, after being diagnosed with Legionnaires' disease and viral pneumonia (TR 429, 471, 487, 490). A treating physician, Dr. Zehra Noorani, reported on October 27, 2003, that the claimant was feeling much better (TR 428). Other than some shoulder pain, Plaintiff told his doctor that he was doing fine (TR 426). A physical examination by the treating physician noted that claimant's lungs were clear to auscultation, with no abnormal breath sounds (TR 426). By January 2005, Dr. Noorani stated that Plaintiff was "coming along pretty well" (TR 422). Four months later, the treating doctor indicated that the claimant's weight had returned to normal, despite continued complaints of abdominal pain (TR 421).

A consultative evaluation by Dr. Mary Wood in February 2004, noted that Plaintiff was well built and well nourished. He did not appear to be acutely ill or in any distress. Dr. Wood reported that a pulmonary function study showed mild pulmonary airway defects, and that a cardiac study showed no evidence of right-side congestive heart failure (TR 340-341). Dr. William Patton, another consultative examiner, stated in December 2004, that Plaintiff was doing well from a respiratory standpoint. According to Dr. Patton, claimant's chest was clear, no abnormal breath sounds were heard, and his cardiac tones were normal (TR 375). A cardiac stress test, performed in May 2004, reflected no irregularities (TR 374).

The medical record also revealed that claimant's diabetes was successfully brought under control. Dr. Annette Chang, a treating doctor, reported in June 2004, that claimant's glycemic control had remained stable over the past five months (TR 400). Dr. Chang stated, in a follow-up visit three months later, that there had been an improvement in

claimant's fasting glucose levels (TR 397). There was no indication that Plaintiff suffered any severe end organ damage as a result of his diabetes.

Plaintiff underwent two surgical procedures on his right shoulder in April and July 2005 (TR 437-438, 441-442). Following the second operation to remove adhesive capsulitis, Plaintiff reportedly had minimal shoulder pain (TR 551). The claimant cancelled several physical therapy appointments because he no longer felt the need for regular shoulder treatment (TR 548-550). In a residual functional capacity evaluation, dated May 24, 2005, Dr. Noorani stated that the claimant's prognosis was stable. The treating doctor believed that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and that he had no limitations in grasping and manipulating objects. Dr. Noorani estimated that Plaintiff could stand for upwards of three hours, and that he could sit for three to four hours before needing to change positions. The doctor also restricted claimant to clean air environments where humidity and temperatures were controlled. Dr. Noorani predicted that Plaintiff's impairments would cause him to miss work about four times a month (TR 417-419).

When evaluating Plaintiff's residual physical functional capacity, the Law Judge also took into consideration the opinions of Dr. King, the medical advisor, as well as a state agency medical consultant, both of whom concluded that the claimant could perform a restricted range of sedentary work[2] (TR 364, 611, 614). In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent,

---

[2]Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2007).

severe, totally disabling symptoms stemming from his joint pain, leg numbness and breathing difficulties were not fully credible.

Contrary to Plaintiff's assertion, there was no objective medical evidence suggesting that he suffered severe side effects from pain medications[3], or that he needed to lie down frequently throughout the day. The ALJ took into consideration claimant's objectively proven functional limitations by restricting him to jobs that did not require stair climbing, reaching above shoulder level, or working in polluted air environments.

Plaintiff relies heavily upon the fact that Dr. Laith Farjo found him incapable of returning to work in July 2005 (TR 435-436). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of the treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Farjo offered little objective evidence during the relevant period to support his conclusion of disability, his opinion need not have been given any special weight[4]. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these

---

[3] Claimant's attorney argues that he was unable to engage in normal daily activities as a result of the side-effects of narcotic medication (See Plaintiff's Brief in Support of Summary Judgment at pp. 52-53). Plaintiff testified, however, that he did not experience any adverse medication side-effects (TR 598).

[4] The ALJ rejected the doctor's opinion, setting forth persuasive reasons for doing so. The ALJ expressed concern about the lack of medical documentation to support the opinion. As the Law Judge observed, Dr. Farjo scheduled Plaintiff for right shoulder surgery just three days after he completed the residual functional capacity questionnaire (TR 22). Indeed, it appears the doctor's statement was based primarily on Plaintiff's subjective complaints prior to the corrective surgery.

circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous unskilled clerical, security monitor and receptionist jobs that he could perform with minimal vocational adjustment (TR 619). These jobs provided a sit-stand option, and did not require forceful grasping of objects, frequent stair climbing, or repetitive use of foot controls in the performance of assigned duties. They also did not expose workers to dangerous machinery, unprotected heights, polluted air environments or temperature extremes (TR

618). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Donald A. Scheer
                                        DONALD A. SCHEER
Dated: October 10, 2007          UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

      I hereby certify on October 10, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 10, 2007. **None.**

                                            s/Michael E. Lang
                                            Deputy Clerk to
                                            Magistrate Judge Donald A. Scheer
                                            (313) 234-5217